IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILMER MATAMODOS, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. TDC-15-2190 |
| E-Z-ERECTORS, INC, | * | |
| Defendant. | * | |

\* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Entry of Default Judgment ("Motion") (ECF No. 6) filed by Plaintiffs Wilmer Matamoros, *et al.*[1] Defendant E-Z-Erectors, Inc. has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2(a). On January 31, 2017, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Chuang referred this case to me for a report and recommendation on Plaintiffs' Motion. (ECF No. 7.) I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiffs' Motion be granted in part and denied in part.

**I.    FACTUAL AND PROCEDURAL HISTORY**

In this case, the Plaintiffs filed suit against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (ECF No. 1.) Defendant was personally served with the complaint and summons but did not file an answer or responsive pleading within the requisite time period. On December 16, 2015, Plaintiffs moved for the Clerk's entry of default (ECF No.

---

[1] It appears that Wilmer Matamoros' name is misspelled in the complaint. The Court will refer to Matamoros using the spelling that is used by Plaintiffs in the Motion and in Matamoros' affidavit (ECF No. 6-4).

4), and the Clerk entered default against Defendant on December 17, 2015 (ECF No. 5). On September 6, 2016, Plaintiffs filed the Motion, to which Defendant has not responded. (*See* ECF No. 6-1.)

## II.     LEGAL ANALYSIS

### A.     Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's

assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

**B.      Liability**

Under the FLSA, an employer must pay an employee overtime pay for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a). An employee's overtime rate must be at least "one and one-half times the regular rate at which he is employed." *Id.* An employer must keep records of its employees' wages and hours. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6. If an employer does not keep records or fails to produce them in litigation, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *McLaughlin v. Murphy*, 436 F. Supp. 2d 732, 737 (D. Md. 2005) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946)). Employees do not have to "prove each hour of overtime work with unerring accuracy or certainty." *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988)

Accepting the allegations of Plaintiffs' complaint as true, Defendant's liability is readily established. Defendant employed Plaintiffs as hourly employees to perform work for Defendant in Maryland, Iowa, Indiana, and other states, from at least July 2012 through the time that

3

Plaintiffs' complaint was filed. (ECF No. 1 ¶ 6.) Plaintiffs regularly worked more than forty hours per week, but Defendant did not pay Plaintiffs overtime wages at the rate required by the FLSA. (*Id.* ¶¶13-15.) Having shown that Defendant did not comply with its overtime obligations under the FLSA, Plaintiffs have established Defendant's liability. Accordingly, I conclude that Plaintiffs have stated a legitimate cause of action and are entitled to relief on their claim. I recommend that the Court grant Plaintiffs' motion with respect to Defendant's liability.

### C. Damages

Having determined that Plaintiffs have established Defendant's liability, it is now appropriate to determine the damages to which they are entitled. Generally, an evidentiary hearing is required to determine an award of damages, even in the case of a defendant's default. *See Laborers' Dist. Council Pension v. E.G.S., Inc.,* No. WDQ-09-3174, 2010 WL 1568595 (D. Md. Apr. 16, 2010). However, the Court may award damages "if the record supports the damages requested." *Id.* at *3 (collecting cases). Here, Plaintiffs have provided sufficient evidence to support their claim for damages in the amount of $67,793.30.[2]

Plaintiffs have submitted affidavits in support of their claim for damages. (ECF Nos. 6-3; 6-4; 6-5). In addition, each of the plaintiffs' unpaid overtime wages are summarized in the spreadsheets attached to the motion and to Plaintiffs' supplement. (*See* ECF Nos. 6-6 & 10-1 at 2-4.) The spreadsheets summarize the overtime hours worked by each plaintiff, the hourly rate and corresponding overtime rate, and the total unpaid overtime. The spreadsheets initially submitted by Plaintiffs are somewhat inconsistent with the affidavits attached to the motion. Most notably, the original spreadsheets include overtime hours for a period of six weeks during which none of the plaintiffs performed work for Defendant. (*See* ECF Nos. 6-3 at 3; 6-4 at 3; 6-5

---

[2] The narrative discussion of Plaintiff's damages in the following paragraphs is summarized in a table appended to the end of this Report and Recommendation.

at 3.) The Court directed Plaintiffs to supplement their motion to explain this inconsistency. (ECF No. 8.) Plaintiffs filed revised spreadsheets that did not include any claim for overtime wages during these six weeks, thus resolving the previous inconsistency. (*See* ECF No. 10-1 at 2-4.) I find that Plaintiffs' affidavits, considered in connection with the revised spreadsheets, contain "sufficient evidence to show the amount and extent of [their] work as a matter of just and reasonable inference." *See McLaughlin*, 436 F. Supp. at 737.

Although the revised spreadsheets fairly capture the statements made by Plaintiffs in their affidavits, they also contain information related to damages that are not available to Plaintiffs in this case. In the complaint, Plaintiffs sought damages only for unpaid overtime under the FLSA. (ECF No. 1.) Plaintiffs did not seek damages for unpaid regular wages under the Maryland Wage Payment and Collection Law, Md. Code, Lab. & Empl. Art., § 3-501 *et seq*. (*Id.*) Because a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c). Plaintiffs' damages claim is limited to damages for unpaid overtime wages. Plaintiffs may not recover damages for their unpaid regular wages in their motion for default judgment.[3]

### 1. Rosa Alonzo's damages

In support of her claim for damages, Rosa Alonzo has submitted an affidavit. (ECF No. 6-3.) According to the affidavit, which is not disputed, Alonzo was employed by Defendant from March 30, 2015 through June 24, 2015. (*Id.* ¶ 2.) While she was Defendant's employee, her work schedule changed from week to week, depending on Defendant's needs. (*Id.* ¶ 8.) Alonzo's hourly wage started at $11.00, but later was raised to $12.00. (*Id.* ¶ 6.) She generally worked

---

[3] In the Motion, Plaintiffs did not initially seek damages for their unpaid regular wages. The Court's letter of January 31, 2017 (ECF No. 8) may have led to some confusion and resulted in the inclusion of damages for regular wages in Plaintiffs' supplement to the motion. In any event, damages for Plaintiffs' regular wages are not available in a default judgment.

about 66 hours per week and was paid a straight hourly wage for each hour, regardless of whether she worked more than 40 hours in a week. (*Id.* ¶¶ 7, 9.) Some weeks she worked especially long hours. For example, during the time she was assigned to work in Baltimore, she worked a total of 197 hours in two weeks: 90 hours in the first week and 107 hours in the second week. (*Id.* ¶ 9.) During six weeks of the time period when she was working for Defendant, she did not work at all. (*Id.* ¶ 5.) For the last several weeks of her employment, Defendant did not pay Alonzo anything at all. (*Id.* ¶ 9-10.) Alonzo quit or was fired from her job on July 24, 2015 because she refused to continue to work without pay. (*Id.* ¶ 11.)

Alonzo was paid regular wages for the hours that she worked between March 2015 and May 2015, but she was not paid an overtime rate for her overtime hours. Accordingly, her damages for these months can be calculated by multiplying the number of hours of overtime she worked each week by the half-time rate of her wage, which changed in May 2015. Between March 30 and April 12, 2015, Alonzo worked a total of 52 overtime hours. (ECF No. 10-1 at 3.) Because her regular hourly rate at that time was $11.00 per hour, her overtime half-time rate for these weeks is $5.50 per hour. During the week of May 24, 2015, Alonzo worked 26 overtime hours. Her overtime half-time rate for this week is $6.00 per hour. Alonzo is entitled to partially unpaid overtime in the amount of $442.00 for the time period of March 30, 2015 through May 30, 2015. (*See* ECF No. 10-1 at 3.)

Beginning on May 31, 2015 and continuing through the end of her employment on June 24, 2015, Alonzo was not paid any wages at all. For this reason, she is entitled to damages equivalent to the full one-and-one-half time rate for her overtime hours. During this time, she worked 131 overtime hours. At a rate of $18.00 per hour, Alonzo is entitled to unpaid overtime in the amount of $2,358.00 for this time period. Because Alonzo did not seek regular wages in

the complaint, she is limited to recovering her unpaid overtime wages and may not recover her unpaid regular wages in a default judgment. *See* Fed. R. Civ. P. 54(c).

Based on these calculations, Alonzo is entitled to $2,800.00 in unpaid overtime and an equal amount in liquidated damages, *see* 29 U.S.C. § 216(b), which amounts to a total of $5,600.00. I recommend that the Court enter judgment in favor of Alonzo and against Defendant for $5,600.00.

### 2. Wilmer Matamoros' damages

Wilmer Matamoros also submitted an affidavit. (ECF No. 6-4.) Matamoros worked for Defendant from January 20, 2013 through June 24, 2015. (*Id.* ¶ 2.) He was initially paid an hourly wage of $11.00, but by April 2015 he was earning $14.50 per hour. (*Id.* ¶ 6.) Like the other plaintiffs, Matamoros worked long hours. His affidavit provides several examples of instances where he worked more than 40 hours per week. (*Id.* ¶ 7.) He was never paid an overtime premium of one-and-one-half times his hourly rate for his overtime hours. (*Id.*) He quit or was fired from his job on July 24, 2015 after complaining that he would no longer work without pay. (*Id.* ¶ 11.)

Matamoros was paid regular wages for the hours that he worked between August 2013 and May 2015, but he was not paid an overtime rate for his overtime hours. Accordingly, his damages for these months can be calculated by multiplying the number of hours of overtime he worked each week by the half-time rate of his wage, which changed in April 2015. Between August 27, 2013 and March 31, 2015, Matamoros worked a total of 2,158 overtime hours.[4] (*See* ECF No. 6-6 at 2.) Because his regular hourly rate at that time was $13.00 per hour, his overtime

---

[4] In the spreadsheet attached to the supplement to the motion, Plaintiffs mistakenly state that there are 88 weeks between August 27, 2013 and March 31, 2015. (ECF NO. 10-1 at 2.) There are only 83 weeks in this time period, which is correctly reflected in Plaintiffs' initial submission (ECF No. 6-6 at 2).

rate was $19.50 per hour and his half-time rate was $6.50 per hour. For the time period of August 27, 2013 to March 31, 2015, Matamoros is entitled to $14,027.00 in unpaid overtime, which is the product of multiplying 2,158 overtime hours by his half-time rate of $6.50 per hour. During the weeks of April 1, 2015 and May 24, 2015, Matamoros worked 26 overtime hours each week. Because his regular wage had increased to $14.50, his corresponding overtime rate increased to $21.75, resulting in a half-time rate of $7.25. For the weeks of April 1, 2015 and May 24, 2015, Matamoros is entitled to $377.00, which is the product of multiplying 52 overtime hours by his half-time rate of $7.25 per hour.

Beginning on May 31, 2015 and continuing through the end of his employment on June 24, 2015, Matamoros was not paid any wages at all. For this reason, he is entitled to damages equivalent to the full one-and-one-half time rate for his overtime hours. Between May 31, 2015 and June 24, 2015, Matamoros worked 131 overtime hours. Because his regular wage for this time period was $14.50 per hour, his overtime rate was $21.75. Because he was not paid any wages at all for the hours of overtime he worked, he is entitled to the full overtime hourly rate. Accordingly, for the time period of May 31, 2015 to June 24, 2015, Matamoros is entitled to $2,849.25, which is the product of 131 overtime hours at a rate of $21.75 per hour.[5] Because Matamoros did not seek regular wages in the complaint, he is limited to recovering his unpaid overtime wages and may not recover his unpaid regular wages in a default judgment. *See* Fed. R. Civ. P. 54(c).

---

[5] The spreadsheets summarizing Matamoros' hours worked (ECF Nos. 6-6 at 2 & 10-1 at 2) are inconsistent. The Court relies on the more recent submission (ECF No. 10-1 at 2) because it is consistent with Matamoros' affidavit (ECF No. 6-4).

Based on these calculations, Matamoros is entitled to $17,253.25 in unpaid overtime and an equal amount in liquidated damages, which amounts to a total of $34,506.50. I recommend that the Court enter judgment in favor of Matamoros and against Defendant for $34,506.50.

### 3. Cristian Arostegui's damages

Cristian Arostegui's affidavit states that he worked for Defendant from April 28, 2014 through June 24, 2015. (ECF No. 6-5 ¶ 2.) He started at an hourly wage of $12.00 but later received a raise to $13.00 per hour. (*Id.* ¶ 6.) Like Alonzo and Matamoros, with the exception of the six weeks that the plaintiffs did not work for Defendant while in California, Arostegui worked long hours. (*Id.* ¶¶ 5, 8-9.) Arostegui also stopped working for Defendant in July 2015 after going several weeks without being paid. (*Id.* ¶ 11.)

Arostegui was paid regular wages for the hours that he worked between April 28, 2014 and May 30, 2015, but he was not paid an overtime rate for his overtime hours. Accordingly, his damages for these months can be calculated by multiplying the number of hours of overtime he worked each week by the half-time rate of his wage, which changed in May 2015. Between April 28, 2014 and May 1, 2015, Arostegui worked a total of 1,352 overtime hours. (ECF No. 10-1 at 4.) Because his regular hourly rate at that time was $12.00 per hour, his overtime rate was $19.50 per hour and his half-time rate was $6.00 per hour. For the time period of April 28, 2014 and May 1, 2015, Matamoros is entitled to $8,112.00 in unpaid overtime, which is the product of multiplying 1,352 overtime hours by his half-time rate of $6.00 per hour. During the week of May 24, 2015, Arostegui worked 26 overtime hours. Because his regular wage had increased to $13.00, his corresponding overtime rate increased to $19.50, resulting in a half-time rate of $6.50. For the week of May 24, 2015, Arostegui is entitled to $169.00, which is the product of multiplying 26 overtime hours by his half-time rate of $6.50 per hour.

Beginning on May 31, 2015 and continuing through the end of his employment on June 24, 2015, Arostegui was not paid any wages at all. For this reason, he is entitled to damages equivalent to the full one-and-one-half time rate for his overtime hours. Between May 31, 2015 and June 24, 2015, Arostegui worked 131 overtime hours. Because his regular wage for this time period was $13.00 per hour, his overtime rate was $19.50. Because he was not paid any wages at all for the hours of overtime he worked, he is entitled to the full overtime hourly rate. Accordingly, for the time period of May 31, 2015 to June 24, 2015, Arostegui is entitled to $2,554.50, which is the product of 131 overtime hours at a rate of $19.50 per hour. Because Arostegui did not seek regular wages in the complaint, he is limited to recovering his unpaid overtime wages and may not recover his unpaid regular wages in a default judgment. *See* Fed. R. Civ. P. 54(c).

Based on these calculations, Arostegui is entitled to $10,835.50 in unpaid overtime and an equal amount in liquidated damages, which amounts to a total of $21,671.00. I recommend that the Court enter judgment in favor of Arostegui and against Defendant for $21,671.00.

### D.     Attorney's Fees and Costs

Reasonable attorney's fees and costs are mandatory under 29 U.S.C. § 216(b). In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit

arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for nine to fourteen years may reasonably bill $225-350 per hour, and that lawyers admitted to the bar for less than five years may reasonably bill $150-225 per hour. Paralegals and law clerks may reasonably bill $95-150 per hour. These hourly rates serve as guidelines in determining the reasonableness of hourly rates.

Throughout this litigation, Plaintiffs have been represented by Gregg Greenberg and Roy Lyford-Pike of the law firm of Zipin, Amster & Greenberg, LLC. Mr. Greenberg has practiced law for about 9 years and Mr. Lyford-Pike has practiced for slightly more than one year. Mr. Greenberg's billing rate is $295.00 per hour, which is within the suggested range set forth in the Local Rules. Mr. Lyford-Pike's hourly rate of $205.00 per hour is also within the suggested range. In addition, Plaintiffs' attorneys were assisted by Brenda Arias, a paralegal who billed at a rate of $135.00 per hour, which is within the suggested range. I find that these hourly rates are reasonable under the circumstances of this case.

Plaintiffs have submitted detailed time records showing the work performed by the attorneys and paralegal. (ECF No. 6-7 at 5-6.) In total, Plaintiffs' attorneys and paralegal spent more than 24 hours working on this case from July 2015 through August 2016. I find that the time Plaintiffs' counsel and their paralegal spent working on this case is reasonable. I recommend that the Court award attorney's fees to Plaintiffs in the amount of $5,551.05.

Finally, Plaintiffs incurred a total of $464.75 in costs, which includes the $400 fee for filing the complaint and a service of process fee of $64.75. I recommend that the Court award costs to Plaintiffs' in the amount of $464.75.

**III.     CONCLUSION**

In sum, I recommend that the Court:

1.    Grant Plaintiffs' Motion for Judgment by Default (ECF No. 6);

2.    Enter judgment in favor of Plaintiffs and against Defendant in the total amount of $67,793.30 (the sum of $5,600 in unpaid overtime wages plus statutory damages for Rosa Alonzo, $34,506.50 in unpaid overtime wages plus statutory damages for Wilmer Matamoros, $21,671.00 in unpaid overtime wages plus statutory damages for Cristian Arostegui, $5,551.05 in attorney's fees, and $464.75 in costs).

I also direct the Clerk to mail a copy of this Report and Recommendation to Defendant E-Z Erectors, Inc. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days of the date of this Order, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

| | |
|---|---|
| March 13, 2017 | /s/ |
| Date | Timothy J. Sullivan |
| | United States Magistrate Judge |